UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD P. MORSE and MORSE FAMILY LLC #1,<br><br>Plaintiffs,<br><br>v.<br><br>SEG US 95, LLC,<br><br>Defendant. | Case No. 2:09-CV-00541-EJL<br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is the Defendant's Partial Motion for Summary Judgment. The parties have filed responsive briefing and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

# FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs, Edward P. Morse and Morse Family, LLC #1, own three adjoining parcels of real property in northern Idaho which, in 2006, had been planned for commercial development as the Honeysuckle Plaza subdivision. (Dkt. 1.) In April of 2006, Plaintiffs and Defendant SEG US 95, LLC ("SEG") entered into a Ground Lease Agreement ("Ground Lease") for the parcel located on the southeast corner of Honeysuckle Avenue and U.S. 95 in Kootenai County, Idaho ("Leased Property"). The parties anticipated SEG would construct a building on the Leased Property that would then be subleased to Walgreens Co. The terms of this Ground Lease is the subject of the parties' disputed in this case.

After the Ground Lease was executed, on April 25, 2007, Plaintiffs recorded a Plat for the land upon which the Leased Property is a part of that described easements for access, utilities, and a common reserved access driveway for all of the Honeysuckle Plaza subdivision. (Dkt. 1.) Thereafter, on February 26, 2008, Walgreens and SEG entered into a sublease agreement. On October 16, 2008, Plaintiffs and SEG executed a Memorandum of Lease. Ultimately, SEG constructed a building on the Leased Property which, Plaintiffs argue, encroaches upon some of the easements as recorded in the Plat. As a result, Plaintiffs initiated this action by filing their Complaint raising claims for 1) Breach of Ground Lease, 2) Trespass, Nuisance and/or Encroachment of Morse Family Reversionary Interest, 3) Trespass, Nuisance and/or Encroachment of Mr. Morse's Reversionary Interest, 4) Trespass, Nuisance, and/or Encroachment of Morse Family, 5) Interference with Contract Rights of Morse Family, and 6) Injunctive Relief. (Dkt. 1.) SEG filed an Answer denying the

**MEMORANDUM ORDER - 2**

allegations and raising Counterclaims for 1) Breach of Contract and 2) Breach of the Covenant of Quiet Enjoyment. (Dkt. 7.) SEG has filed the instant Motion seeking partial summary judgment in its favor on its Counterclaim for Breach of Contract and against Plaintiffs on their First, Second, Third, Fifth, and Sixth causes of action. (Dkt. 30.)[1] The Court finds as follows.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).[2] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence

---

[1] SEG's Motion goes only to its Counterclaim for Breach of Contract but leaves for trial its contract claim for money damages as to Mr. Morse's alleged refusal to execute a Memorandum of Lease. (Dkt. 30, p. 7 n. 4.)

[2] Federal Rule of Civil Procedure 56 was revised effective December 1, 2010. Though the Motion for Summary Judgment in this case was filed prior to December 1, 2010, the Court will apply the revised Rule 56 as applying it in this action is not infeasible and does not work an injustice. *See* Fed. R. Civ. P. 86(a)(2)(B).

**MEMORANDUM ORDER - 3**

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).[3]

---

[3] *See also,* Rule 56(e) which provides:

(e) **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  (1)  give an opportunity to properly support or address the fact;
  (2)  consider the fact undisputed for purposes of the motion;
  (3)  grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
  (4)  issue any other appropriate order.

**MEMORANDUM ORDER - 4**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

This is a contract dispute were both sides have differing interpretations of the terms

of the Ground Lease. The Ground Lease includes basic lease terms governing the parties' relationship with respect to the Leased Property. (Dkt. 33-1.) Attached to the Ground Lease are Exhibits including: 1) Exhibit A - Legal Description; 2) Exhibit B - the site plan; 3) Exhibit C - Encumbrances; and 4) Exhibit D - Walgreens Estoppel. (Dkt. 33-1.) Exhibit A is a legal metes and bounds description of the Leased Property prepared by Tate Engineering.(Dkt. 33-1; 36, ¶ 7.) Exhibit B is a diagram of the proposed site plan for the building to be constructed which is dated April 20, 2006. Included on Exhibit B are "dotted lines" of easements for access, utilities, and the common reserved access driveway as of April 20, 2006. (Dkt. 33-1.) Exhibit C is empty with only Mr. Morse's hand-written words: "Blank Page - to be agreed upon EM 4/20/06." (Dkt. 33-1; Dkt. 33-2, Morse Depo., p. 4-5.)

Plaintiffs' claims generally assert SEG breached the Ground Lease by constructing the building so as to encroach upon the easements as reflected in the Plat on the Leased Property over the objection and without the approval of Plaintiffs. (Dkt. 1.) SEG contends, as a matter of law, that Plaintiffs cannot show that Mr. Morse did not agree to the location of the building on the Leased Property. (Dkt. 30.) On its Counterclaim SEG argues Plaintiffs violated the terms of the Ground Lease by failing to deliver possession of the Leased Property free from any easements or encumbrances to which the parties did not agree. (Dkt. 30.)

As a district court exercising diversity jurisdiction, this Court must apply state substantive law. *Strong v. Unumprovident Corp.*, 393 F.Supp.2d 1012, 1018 (D. Idaho 2005) (citations omitted). In interpreting the Ground Lease here, the Court begins by interpreting

**MEMORANDUM ORDER - 6**

the plain language of the contract to determine whether or not there is an ambiguity. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau*, 115 P.3d 751, 753-54 (Idaho 2005) (citing *Clark v. Prudential Property and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003)). This is a question of law which the Court must resolve by construing the contract "as a whole, not by an isolated phrase." *Selkirk Seed Co. v. State Ins. Fund*, 18 P.3d 956, 959 (Idaho 2000). A provision is ambiguous if "it is reasonably subject to conflicting interpretations." *Cascade Auto Glass*, 115 P.3d at 754 (citation omitted). If, however, a contract term is found to be ambiguous, then its interpretation is a question of fact requiring the trier of fact to determine "what a reasonable person would have understood the language to mean and the words used must be construed given their ordinary meaning." *Clark*, 66 P.3d at 245 (citation omitted).

**1.    Defendant's Counterclaim for Breach of Contract**

SEG argues Plaintiff failed to deliver possession of the Leased Property free of any easements or encumbrances to which it had not agreed in breach of the Ground Lease. SEG points, in particular, to Paragraph 4.1 of the Ground Lease which requires Plaintiffs to deliver possession of the Leased Property "free of all encumbrances, liens, restrictions, agreements, easements or any third party rights except for those specifically set forth in Exhibit "C" attached to this lease...." (Dkt. 33-1 and Dkt. 30, p. 6.) Exhibit C does not contain any terms. (Dkt. 33-1, Ex. C.) Plaintiffs counter that there is a genuine issue of material fact as to whether Mr. Morse materially breached the Ground Lease. (Dkt. 34, p. 7.) The Court agrees with Plaintiffs.

SEG asserts there is no dispute that Mr. Morse created easements "without SEG's

knowledge or consent" and it had "not agreed" to those encumbrances. (Dkt. 34, pp. 6-7.) Though it does not appear to be disputed that the recording of the Plat placed easements/encumbrances on the Leased Property which the building encroaches upon, there is clearly a dispute over whether or not SEG knew of and/or agreed to those encumbrances. In the materials filed by the parties on the Motion, both sides assert the other party knew of the other's intentions and agreed/did not oppose the same.

In support of its Motion, SEG points to statements by Mr. Morse in his deposition as evidence of his admission that he did not get SEG's approval prior to recording the Plat with the new easements. (Dkt. 34, pp. 6-7.) During his deposition, Mr. Morse stated that he had recorded the Plat in April of 2007 that created easements on the Leased Property. (Dkt. 33-2, pp. 22-23.) When asked if he sought or obtained SEG's agreement to the easements before recording the Plat Mr. Morse responded:

> I certainly notified them. I notified them of the availability of electronic copies. I asked and obtained site plans from them that would – so that we could see whether the project fit, which they provided. And then as soon as I recorded it, I sent them and their architects copies of the information and the plats, and then communicated with them on whether it would work.

(Dkt. 33-2, p. 23.) Defense counsel moved to strike this response and asked the question again to which Mr. Morse responded "I am not sure, but I don't think that I had them pre-approve the easements." (Dkt. 33-2, p. 23.) In follow up questioning, Mr. Morse agreed that it was fair to assume he had not sought SEG's approval prior to recording the Plat. (Dkt. 33-2, p. 23.) For SEG, the analysis of its Counterclaim is at an end upon Mr. Morse's acknowledgment in his deposition that he did not get SEG's approval before filing the Plat.

**MEMORANDUM ORDER - 8**

However, Plaintiffs argue SEG and Damian Cronkhite knew about the recorded Plat before they made material changes to the site plan on July 26, 2007. (Dkt. 34, p. 8.) In his own Affidavit, Mr. Morse states the Plat was recorded because the City of Hayden no longer allowed for the land to be adjusted by boundary line but now required the property first be platted before it would issue a building permit for construction of the Walgreens' store. (Dkt. 36, ¶ 7.) Mr. Morse avers that he told Mr. Cronkhite this fact and that the Plat was recorded with Mr. Cronkhite's knowledge and consent. (Dkt. 36, ¶¶ 6-8.) The Plat was prepared, Mr. Morse states, by Jon Monaco, not Tate Engineering; a fact which Mr. Morse contends he "personally advised Mr. Cronkite" of. (Dkt. 36, ¶¶ 8, 14.) In addition, Mr. Morse states he was concerned that the building plans for the Walgreens' store that were submitted to the City of Hayden failed to recognize the changes to the site or account for the recordation of the Plat so he faxed excerpts of the Plat to Mr. Cronkhite on June 7, 2007. (Dkt. 36, ¶¶ 9-10.)

SEG submitted Damian Cronkhite's Affidavit in support of the Motion. Mr. Cronkhite was employed by the architectural firm of Bernardo-Wills, PC, and performed work regarding the site plans for the building which was constructed on the Leased Property. (Dkt. 32.) Mr. Cronkhite's Affidavit acknowledges receiving the June 7, 2007 fax from Mr. Morse but states he "received and relied upon electronic documents from Tate Engineering" on June 8 and 11, 2007 in developing the site plan. (Dkt. 32, ¶¶ 5-6.) Mr. Cronkhite states he used the electronic documents from Tate Engineering, not Jon Monaco, to assist in the building permit review process and the site plan approved by the City of Hayden which Mr. Morse "participated in...to include receiving the attached site plan set forth as Exhibit 6." (Dkt. 32,

**MEMORANDUM ORDER - 9**

¶¶ 8-9.) Mr. Cronkhite's deposition testimony is consistent with his Affidavit. (Dkt. 37-1.)

Although SEG maintains, and the record seems to support, it did not agree to the easements prior to the Plat being recorded, the Plaintiffs have come forward with evidence sufficient to raise a question of material fact about whether SEG's knowledge of and/or actions subsequent to the Plat being recorded prove SEG's agreement to the easements. Likewise, SEG has pointed to evidence drawing into question whether the Plaintiffs' actions in recording the easements on the Plat were in breach of the Ground Lease. Because these matters are in dispute, they cannot be resolved as a matter of law on this Motion.

The materials submitted by the parties, at least at this stage, show that disputed facts must be resolved before SEG's Counterclaim can be decided. To do otherwise would require the Court to "resolve the parties' differing versions of the truth at trial" which is contrary to the standard for summary judgment. *Hahn*, 523 F.3d at 464. In ruling on this Motion the Court must view the facts in the light most favorable to the Plaintiffs. What was known and/or agreed to by the parties in terms of the easements/encumbrances recorded on the Plat turns on questions of fact and cannot be determined as a matter of law on this Motion. Even though Mr. Morse in his deposition seems to concede that he did not get SEG's approval of the Plat's easements prior to it being recorded, that concession is not unqualified in light of Mr. Morse's other deposition testimony and Affidavit. Moreover, even if Mr. Morse did not get prior approval from SEG, that fact alone is not decisive of the outcome of the Counterclaim. Whether Mr. Morse breached the Ground Lease by recording the Plat turns on many disputed facts not the least of which include whether SEG agreed to the easements

MEMORANDUM ORDER - 10

in the Plat.

In its reply, SEG challenges Plaintiffs' position that it knew about the Plat by pointing out that the ALTA survey was done after the easements had been created; maintaining it had no knowledge nor did it agree to the easements prior to the recording of the Plat. (Dkt. 42, p. 10.) This argument ignores the fact that the easements recorded in the Plat were as to the site plan in place in April of 2007 as reflected in Exhibit B to the Ground Lease. (Dkt. 33-1.) The July 2007 ALTA survey was, however, obtained by SEG before it made the changes to the site plan on July 26, 2007. Thus, the fact that SEG had the ALTA survey which identified the easements from the Plat is evidence going to show SEG knew of the easements prior to the changes it made to the site plan. SEG has also consistently argued the site plan attached as Exhibit B to the Ground Lease was a "draft" and that no final building location had been determined. (Dkt. 7, pp. 2-3.) This argument, however, only leads to more factual disputes between the parties. The evidence submitted on this Motion by both sides as to which site plan, Plat, survey, and the like were known and agreed or objected to by each of the parties can only be described as a moving target. SEG refers to Exhibit B as "preliminary" and "draft" with no final location yet determined and the parties anticipating more changes before the location was finalized sometime later in 2007. (Dkt. 7, pp. 2-3.) The Plaintiffs, however, argue the Plat needed to be filed in order for the City of Hayden to issue a building permit which they did in April of 2007 based on the site plan in Exhibit B to the Ground Lease. (Dkt. 33-1.) As a result, who knew what and whether that knowledge or communications between the parties amounted to an agreement or objection to the easements in the Plat is a

**MEMORANDUM ORDER - 11**

genuine issue of material fact in dispute that must be resolved at trial.

Based on the foregoing, the Court denies SEG's Motion for Summary Judgment on their Counterclaim for Breach of Contract.

**2.     Summary Judgement as to Plaintiffs' First, Second, Third, Fifth, and Sixth Claims**

SEG also seeks summary judgment on Plaintiffs First, Second, Third, Fifth, and Sixth Claims arguing these claims require Plaintiffs to prove Mr. Morse objected to the location of the building. SEG maintains, as a matter of law, Plaintiffs cannot make such a showing. SEG argues that Mr. Morse "expressly approved the site plan, several times, and that he never objected to it." (Dkt. No. 42, p. 3) (emphasis and quotation omitted). In particular, SEG points to an August 16, 2007 email sent by Mr. Morse where in he states the site plan "looked good." (Dkt. 33-3, Ex. 4.) This email, among other evidence, SEG argues, shows Mr. Morse's agreement to the site plan. Plaintiffs dispute that Mr. Morse ever agreed to the placement of the building to encroach on the easements as recorded in the Plat.

In his Affidavit, Mr. Morse explains that his August 16, 2007 email was made in reliance on Scott Grainger's prior representation on August 7, 2007 that the proposed site plan would not require any modification to the legal description or Plat and that the site plan was misleading in that it did not accurately represent the location of the easements. (Dkt. 36, ¶ 11.) It was his belief, Mr. Morse states, that the Defendants had reviewed the Plat and determined the site plan would not conflict with the easements and his "agreeing to the site plan" was in reliance upon Mr. Grainger's representation. (Dkt. 36, ¶ 13.) Mr. Morse goes

**MEMORANDUM ORDER - 12**

on to state he had "no knowledge that the location of the Walgreens's building as set forth in that particular site plan would, in fact, encroach into the 40 foot access and utility easement." (Dkt. 36, ¶ 13.)

The facts surrounding this email are disputed. Again, the parties disagree over who said what, what was known by whom, and what, if anything, was objected or agreed to by anyone. SEG also points to other instances in the record which it believes evidence Mr. Morse "express approval." (Dkt. 42, p. 3 n. 2.) These instances include emails and actions by Mr. Morse the ramifications of which, whether they evidence his objection or approval to the changes in the site plan, are dependent upon the resolution of factual discrepancies. The depositions, affidavits, email exchanges, and the like presented by both sides show the issues in this case turn on disputed facts. These materials reveal a great deal of back and forth occurred between the parties during the relevant time period in an effort to complete the deal. The intent, knowledge, and either agreement or objection by both of the parties simply cannot be determined as a matter of law from these exchanges. As such, the Court concludes that genuine issues of material fact preclude granting SEG's Motion on the Plaintiffs' First, Second, Third, Fifth, and Sixth Claims.

Further, SEG argues the Plaintiffs have changed their claims and are asserting "new, unpleaded claims" that Mr. Mores relied upon Mr. Grainger's email. (Dkt. 42, p. 4.) The Court, at this stage, does not read the Complaint as narrowly as SEG suggests. The crux of the Plaintiffs' claims are that SEG constructed a building based on a site plan that was not approved by Plaintiffs. (Dkt. 1.) Paragraph 8.2 of the Ground Lease states that the parties

**MEMORANDUM ORDER - 13**

"shall agree to the placement of the building on the site...." (Dkt. 33-1.) The claims raise the question of whether or not Mr. Morse agreed to the site plan that SEG ultimately used to construct the building. The Plaintiffs' explanation of Mr. Morse's August 2007 email as being made in reliance upon Mr. Grainger's prior email is not a "new claim" as SEG argues. (Dkt. 42, p. 4.) Instead, it is Plaintiffs' theory based upon their view of the facts in this case; that Mr. Morse's did not approve SEG's building location. Just as it is SEG's theory that Mr. Morse's email evidences his "express approval" of the site plan.[4] Which version of the facts prevails is in dispute at this time. As the record currently stands, the genuine issues of material fact preclude summary judgment and the Motion is denied as to Plaintiffs' First, Second, Third, Fifth, and Sixth Claims.

3.  **Conclusion**

The parties' positions in this case essentially raise the same arguments albeit different sides to the same coin. Both argue the other party breached the Ground Lease. SEG asserts the Plaintiffs' filing of the Plat with easements and encumbrances different in location and size from those in the draft site plan Exhibit B to the Ground Lease was done without SEG's approval and in violation of Paragraph 4.1 of the Ground Lease. (Dkt. 7, p. 4, ¶ 14 and p. 9, ¶ 5.) In a similar vein, the Plaintiffs' contend SEG breached the Ground Lease by building in a location not agreed to by Plaintiffs, which SEG materially changed from the site plan in

---

[4] So too with SEC's argument that it is undisputed that Mr. Morse did not rely on Mr. Gringer's prior email, this asks the Court to weigh facts and make credibility determinations about evidence to which Plaintiffs have offered countering evidence. (Dkt. 42, p. 6-9.) To do so would be contrary to the standard on this Motion.

**MEMORANDUM ORDER - 14**

Exhibit B, which encroaches upon the easements as recorded in the Plat. (Dkt. 1.) In response to these arguments, both sides counter that 1) the other party knew of the actions each were making, whether it be recording the Plat or changing the site plan, and 2) the other party agreed to and/or did not oppose the actions.

The claims here turns on what was known, by whom, and what, if any, agreement was reached as a result in terms of the recording of the Plat and the changes to the site plan. The materials supplied by the parties on this Motion serve only to make clear that the facts upon which these claims turn are in dispute. As such, the claims cannot be resolved as a matter of law. For the reasons stated herein, the Motion is denied.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Partial Motion for Summary Judgment (Dkt. 29) is **DENIED**. This matter remains set for a bench trial on November 1, 2011.

IT IS FURTHER ORDERED that the Parties shall again attempt settlement negotiations either on their own or by contacting Magistrate Judge Williams' Chambers to schedule a Settlement Conference.[5]

---

[5] The Court is aware that the parties attempted settlement discussions before Magistrate Judge Williams previously in this case before the briefing on this Motion was complete. Now having ruled upon the Motion, the Court directs the parties to engage in further efforts at settlement in this case prior to trial in an effort to limit the costs and expenses in light of the Court's ruling on the Motion.

The parties shall jointly advise the Court on or before **October 3, 2011** of their settlement efforts in this matter.

DATED:  **September 2, 2011**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 16**